UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PAUL CATLIN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:10-cv-0451-LJM-DML |
| | ) | |
| ALFRED HANSER, RAY W. GRIMM, JR., | ) | |
| LYNDA CORMIER, GARY MERRITT, | ) | |
| GLOBAL QUANTECH, INC., IGOR | ) | |
| SMIRNOV, ACTIS GLOBAL VENTURES, | ) | |
| INC., LAMARCA UNLIMITED, LLC, | ) | |
| Defendants. | ) | |

## ORDER

This matter comes before the Court on Defendant's, Ray W. Grimm, Jr. ("Grimm"),

Motion to Dismiss for failure to state a claim upon which relief can be granted and for lack

of personal jurisdiction, [dkt. no. 37], and Defendants', Lynda Cormier ("Cormier"), Alfred

Hanser ("Hanser"), Gary Merritt ("Merritt"), Igor Smirnov ("Smirnov") (collectively "California

Individual Defendants"), and Gia Wellness[1] and Global Quantech, Inc. ("QuanTech") (all

of whom will be collectively referred to as the "California Defendants"), Motion to Dismiss

for lack of personal jurisdiction, [dkt. no. 42].  The Court has fully considered the parties'

arguments and **GRANTS** Grimm's Motion to Dismiss in its entirety and **GRANTS in PART**

**and DENIES in PART** the California Defendants' Motion.

---

[1]Plaintiff, Paul Catlin ("Catlin"), erroneously named Defendants LaMarca Unlimited, LLC ("LaMarca") in his Complaint as "Gia Wellness."  Catlin has amended his complaint, correcting the name and further correcting "BioPro Technology" to "Actis Global Ventures, Inc." ("Actis").  Dkt. No. 70.

# I.  BACKGROUND

For the purposes of a motion to dismiss under Rule 12(b)(6), the Court accepts all of the Plaintiffs' well-pleaded allegations as true and draws all favorable inferences for the Plaintiffs.  *See Killingsworth v. HSBC Bank*, 507 F.2d 614, 618 (7th Cir. 2007).  With this standard in mind, the Court recites the facts as they are contained within the Complaint.

Smirnov invented and patented a noise field nano-technology known as Molecular Resonance Effect Technology ("MRET") and created QuanTech in order to license the use of MRET technology to companies.  First Am. Compl. ¶¶ 14, 16.  QuanTech purports that MRET neutralizes the effects of man-made Electromagnetic Radiation ("EMR") on the human body by passively emitting low frequency electromagnetic oscillations that resemble resonance frequencies of living cells in the body.  *Id.* ¶¶ 17.  QuanTech has licensed use of MRET technology to Actis and LaMarca for distributing products containing MRET technology in the United States.  *Id.* ¶ 18.  Actis and LaMarca manufacture, distribute and sell products such as the BioPro Cell Chip and the BioPro Universal Chip that purportedly use MRET technology.  *Id.* ¶ 21.  The Cell Chip and the Universal Chip are designed to be adhered to cellular phones and related products and larger home electronic devices, respectively.  *Id.* ¶ 22-23.  LaMarca manufactures, distributes, and sells a similar Gia Wellness branded device called the Cell Guard.  *Id.* ¶ 22.  Actis and LaMarca market both products as protective devices intended for use by consumers in neutralizing the effect of EMR emitted from electronic devices such as cellular phones, laptops, and cordless phones on the human body.  *Id.* ¶¶ 21, 25.

Hanser is a resident of California, was Director, President, and Secretary of Actis during the time it sold products branded as "BioPro," and he was Chief Executive Officer

of LaMarca during the time it sold products branded as "BioPro" and "Gia Wellness." *Id.* ¶ 6. Grimm is a resident of California and was Chairman of the Board of Directors, Chief Executive Officer of Actis when it sold products branded as "BioPro." *Id.* ¶ 7. Cormier is a resident of California, was Vice-President of Sales of BioPro technology while Actis was doing business as BioPro Technology. *Id.* ¶ 8. She was also President of LaMarca while it was selling products branded as "BioPro" and "Gia Wellness." *Id.* Merritt is a resident of California and was Vice-President of Operations of BioPro Technology while Actis was doing business as BioPro Technology during the time that it sold products branded as "BioPro." *Id.* ¶ 9. He also was Vice-Presdient of LaMarca while it was selling products branded as "BioPro" and "Gia Wellness." *Id.*

QuanTech cites several studies in support of its claims of MRET's efficacy, but none of the studies indicate either that EMR poses a danger to human health or that MRET technology can prevent any adverse effect of EMR on human health. *Id.* ¶¶ 33-64. In their marketing materials, Actis and LaMarca claim that various studies substantiate the efficacy of MRET technology. *Id.* ¶ 65. In April 2008, claims regarding the efficacy of MRET technology were studied, and it was concluded that the studies Actis and LaMarca rely on to market their products featuring MRET technology are inaccurate. *Id.* ¶ 70. In spite of that, QuanTech, Actis, and LaMarca continue to market their products with MRET technology as scientifically proven. *Id.* ¶ 71. The California Defendants and Grimm knew that the studies relied on by QuanTech, Actis, and LaMarca to substantiate their claims of MRET technology's efficacy did not provide scientific support for the efficacy of MRET technology. *Id.* ¶ 72.

Actis and LaMarca operate web sites through which they sell their products. *Id.* ¶¶ 74, 76. They also market and sell their products through "independent consultants." *Id.* ¶ 78. Actis and LaMarca provide the consultants with training, materials, and support. *Id.* ¶¶ 78-79. Further, they continually monitor the consultants with phone calls, meetings, and one on one appointments. *Id.* ¶ 82.

On January 24, 2010, Judith Allen ("Allen"), an independent consultant for BioPro branded products, approached Catlin in an effort to sell him a BioPro branded Cell Chip. *Id.* ¶ 105. She used BioPro marketing materials and told him that cellular phone companies use the technology in the Cell Chip to protect the users of their products in order to convince him to purchase the Cell Chip. *Id.* ¶ 106-07. Further she told Catlin that other means of protecting himself from the EMR emitted by cellular phones would be ineffective. *Id.* ¶ 108. As a result of her representations and the marketing materials, Catlin purchased a Cell Chip. *Id.* ¶ 109.

## II. STANDARDS

### A. Rule 12(b)(2)

Rule 12(b)(2) permits the dismissal of a claim for lack of jurisdiction over the person or entity. Fed. R. Civ. P. 12(b)(2). In considering a Rule 12(b)(2) motion to dismiss, the Court reviews any affidavits and other documentary evidence that have been filed, as long as factual disputes are resolved in favor of the non-movant. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520-21 (7th Cir. 1990). Because, here, the issue of personal jurisdiction will be determined in the absence of an evidentiary hearing, Catlin need only make a *prima*

*facie* showing that the Defendants are subject to personal jurisdiction. *See Purdue Research Found. v. Sanofi-Syntheloabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

## B. Rule 12(b)(6)

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint, not to resolve the case on its merits. *See Triad Assoc., Inc. v. Chi. Housing Auth.*, 892 F.2d 583, 586 (7th Cir. 1989); 5B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1356 (3d ed. 2004). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but a plaintiff's complaint may not merely state "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Rather, to survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[,]" not when the plaintiff only raises a "sheer possibility that the defendant has acted unlawfully." *Id.*

"[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (internal quotation omitted). "[T]he height of the pleading requirement is relative to the circumstances[,]" *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009), and "[d]etermining the plausibility of a claim is a context-specific task that requires [the Court] to draw on [its] judicial experience and common sense." *Brown v. JP Morgan Chase Bank*, 334 F. App'x 758, 759 (7th Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1950); *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (instructing that one of the "key questions" is "how much detail realistically can be given . . . about the nature and basis or grounds of the claim."). "Although *Twombly* and *Iqbal* require that a complaint in federal court allege facts sufficient to show that the case is plausible, they do not undermine the principle that plaintiffs in federal courts are not required to plead legal theories." *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010) (internal citations omitted).

Additionally, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Although states of mind may be pleaded generally, the Rule requires that the "circumstances" must be pleaded with particularity. "This means the who, what, when, where and how" of the fraud must be pleaded with particularity in order to satisfy the rule. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

## III. **DISCUSSION**

Catlin claims that Grimm, the California Defendants, and Actis (collectively, "Defendants") violated RICO, 18 U.S.C. § 1962(c). Catlin predicates his claim on allegations that Defendants committed acts that are indictable under the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343. Further, Catlin asserts that Defendants conspired to violate RICO. Catlin also alleges that Defendants violated several state consumer fraud statutes. Finally, Catlin claims that he is entitled to damages from Defendants on an unjust enrichment theory.

Grimm and the California Defendants bring two different motions to dismiss. Grimm's motion addresses the merits of Catlin's claims, the sufficiency of Catlin's allegations regarding Grimm's connection to the RICO association in fact, the specificity of Catlin's fraud allegations, Catlin's standing to bring certain state law claims, and whether the Court can obtain personal jurisdiction over Grimm. The California Defendants join in Grimm's challenge to Catlin's RICO claims on the merits and the sufficiency of Catlin's fraud allegations and further asserts that this Court cannot obtain personal jurisdiction over them. The Court will address the parties arguments regarding personal jurisdiction, then the Defendants' challenge to the sufficiency of the Complaint regarding both the merits and the specificity of Catlin's fraud allegations, and finally the parties' arguments concerning Catlin's state law claims.

## A. PERSONAL JURISDICTION

Grimm, QuanTech, and the Individual California Defendants assert that this Court lacks personal jurisdiction over them.[2]  Most of the parties' argument centers on the meaning of RICO's service of process provisions.  The argument, however, is unnecessary because as is discussed below, Catlin failed to sufficiently plead his RICO claims and, accordingly, the Court dismisses them.  Not contesting that Grimm, QuanTech, and the Individual California Defendants are not subject to the personal jurisdiction of this Court under the traditional personal jurisdiction analysis embodied by *International Shoe v. Washington*, 326 U.S. 310, 316 (1945), and its progeny, Catlin then asserts that the Court can exercise personal jurisdiction over Grimm, QuanTech, and the Individual California Defendants by virtue of their alleged conspiracy with LaMarca and Actis to defraud him.

In a case where no federal statute authorizes nationwide service of process, personal jurisdiction is governed by the law of the forum state.  Fed. R. Civ. P. 4(k)(1)(A); *see Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010).  In Indiana, the determination of whether a court has personal jurisdiction over a defendant is determined by Indiana's long arm statute, Indiana Trial Rule 4.4.  Trial Rule 4.4 states: "a court of [Indiana] may exercise jurisdiction on any basis not inconsistent with the Constitutions of [Indiana] or the United States."  Ind. Trial R. 4.4(a).  Accordingly, the Court has jurisdiction over a

---

[2]LaMarca asserts, in a footnote, that because Catlin did not properly name it in the original Complaint, no personal jurisdiction can attach to it.  However, in his First Amended Complaint, dkt. no. 70, Catlin properly named LaMarca and LaMarca has not further challenged personal jurisdiction.  Catlin alleged that LaMarca engaged in a nationwide marketing campaign and engaged sales people in Indiana.  First Am. Compl. ¶¶ 5, 21, 24, 74, 78-84, 105-08.  Accordingly, this Court has personal jurisdiction over LaMarca, and the California Defendants' Motion is **DENIED** as to LaMarca.

defendant to the limits allowed by the Due Process Clause of the Fourteenth Amendment. *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 966-67 (Ind. 2006). The California Defendants argue that it is unlikely that a conspiracy theory of personal jurisdiction is available under Indiana law, but no controlling authority has declared the conspiracy theory of personal jurisdiction unconstitutional. Because the Indiana long-arm statute extends the jurisdiction of the Court to the outer-limits allowed by the Constitution, the conspiracy theory of personal jurisdiction does appear to be available in Indiana. *See, e.g.*, *No Baloney Mktg., LLC v. Ryan*, 1:09-cv-0200-SEB-TAB, 2010 U.S. Dist. LEXIS 30296, *22-*24 (S.D. Ind. Mar. 26, 2010) (applying a conspiracy theory of personal jurisdiction under Indiana law); *Bacompt Sys. v. Peck*, 1:06-cv-1115-RLY-WTL, 2007 U.S. Dist. LEXIS 15874, *4-*7 (S.D. Ind. Mar. 5, 2007) (same).

In support of his argument that a conspiracy theory of personal jurisdiction provides this Court with personal jurisdiction over Grimm, QuanTech and the Individual California Defendants, Catlin cites *Textor v. Board of Regents of Northern Illinois University*, 711 F.2d 1387, 1392-93 (7th Cir. 1983). *Textor* requires that to successfully plead facts supporting a conspiracy theory of jurisdiction, "a plaintiff must allege both an actionable conspiracy and a substantial act in furtherance of the conspiracy performed in the forum state." *Id.* In Indiana, a civil conspiracy is "a combination of two or more persons, by concerted action, to accomplish an unlawful purpose or to accomplish some purpose, not itself unlawful, by unlawful means." *Indianapolis Horse Patrol, Inc. v. Ward*, 217 N.E.2d 626, 628 (Ind. 1966). Although Indiana does not recognize a cause of action for "civil conspiracy," the state recognizes an action for damages resulting from a conspiracy. *Huntington Mort. Co. v. DeBrota*, 703 N.E.2d 160, 168 (Ind. Ct. App. 1998). Essentially, it is an alternative way of

9

asserting concerted action in the commission of a tort.  *Boyle v. Anderson Fire Fighters Ass'n*, 497 N.E.2d 1073, 1079 (Ind. Ct. App. 1986).  The intentional tort at issue in this case is fraud.  Although Catlin may have plead the essential elements of a common law fraud claim, *see Am. Heritage Banco, Inc. v. McNaughton*, 879 N.E. 1110, 1115 (Ind. 2008), as discussed below, he failed to adequately provide the defendants with notice as to each party's role in the alleged fraud according to the dictates of Rule 9(b).  *See Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 599 (7th Cir. 2001).  Further, Catlin did not plead facts to support an inference that the individual defendants acted outside the scope of their employment in concert with the corporate entities in order to accomplish the fraud.  *See Pearson v. Youngstown Sheet & Tube Co.*, 332 F.2d 439, 442 (7th Cir. 1964) (noting that a conspiracy cannot exist between a corporation and its agent when the agent is acting within the scope of his employment because a corporation can only act and speak through an agent and the effect of charging a conspiracy between the two is to charge a conspiracy by a single party).  Instead, Catlin pled broad legal conclusions concerning the alleged conspiracy.  First Am. Compl. ¶ 148.  Accordingly, a conspiracy theory cannot confer personal jurisdiction on the Court over the defendants.  *Stauffacher v. Bennett*, 969 F.2d 455, 460 (7th Cir. 1992) ("The cases are unanimous that a bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction of the court is not enough"); *Kunik v. Racine County*, 946 F.2d 1547, 1580 (7th Cir. 1991) (conspiracy allegations must be supported by facts suggesting a "meeting of the minds"); *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981) (conclusory allegations of conspiracy will not withstand a motion to dismiss).  As a result, the Court retains personal jurisdiction over only LaMarca and Actis.

## B. RICO CLAIMS

Although RICO is largely a criminal statute, it allows "a civil cause of action for any person 'injured in his business or property' by reason of" its violation. *Beck v. Prupis*, 529 U.S. 494, 496 (2000) (quoting 18 U.S.C. § 1964(c)). Catlin alleges that Defendants violated § 1962(c), which provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

In order to sufficiently plead that Defendants violated § 1962, Catlin must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Richmond v. Nationwide Cassel, L.P.*, 52 F.3d 640, 644 (7th Cir. 1995).

LaMarca argues that Catlin's Complaint fails to allege a pattern of racketeering activity. "A pattern of racketeering activity consists of at least two predicate acts of racketeering committed within a ten-year period." *Roger Witmore's Auto. Servs. v. Lake Cnty., Ill.*, 424 F.3d 659, 670 (7th Cir. 2005) (citing 18 U.S.C. § 1961(5)). Catlin argues that his Complaint sufficiently describes a scheme or artifice to defraud both the independent consultants, who pay to sell the products in question, and the eventual consumers of those products through the use of the mails and wires. "[A] plaintiff alleging predicate acts of mail and wire fraud must do so with particularity." *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 599 (7th Cir. 2001) (citing Fed. R. Civ. P. 9(b)). Accordingly, Catlin must allege the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated,

11

and he must do so with respect to both predicate acts. *Id.* The only transaction that the Complaint specifically identifies is the Allen's sale to Catlin. First Am. Compl. ¶¶ 105-09. Catlin does not allege that there was any use of the mails or wires in connection with this specific sale. Catlin cites to *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 650-53 (2008), for the proposition that first person reliance is not an element of a RICO claim, but that does not cure the fact that his allegations are too vague to amount to even one colorable predicate act of mail or wire fraud. "[A] plaintiff's conclusory allegations that "defendants" also defrauded unidentified "others" are not enough to plead the requisite pattern of fraud." *Goren v. New Vision Int'l*, 156 F.3d 721, 729 (7th Cir. 1998). Accordingly, Catlin fails to allege a pattern of racketeering activity and, therefore, the Court **DISMISSES** Count I of his First Amended Complaint.

Catlin further alleges that Defendants violated 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c). "[T]he touchstone of liability under § 1962(d) is an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute." *Goren*, 156 F.3d at 732. Accordingly, to state a viable claim under § 1962(d), Catlin must allege "(1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals." *Id.* Catlin fails to allege that each defendant entered into such agreements. Instead, Catlin relies on the broad, conclusory allegation that "[t]he nature of the . . . Defendants' co-conspirators' acts, material misrepresentations, and omissions in furtherance of the conspiracy gives rise to an inference that they not only agreed to the objective of a [§ 1962(d)] violation . . . but they

12

were aware that their ongoing fraudulent and extortionate acts have been and are part of an overall pattern of racketeering activity." First Am. Compl. ¶ 148. Citing *Viacom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 778 n.5 (7th Cir. 1994), Catlin argues that at this stage of the proceedings, he need not identify the precise role that defendants played in the conspiracy because the facts surrounding the conspiracy are uniquely within the Defendants' control. However, relaxing the Rule 9(b) standard does not save Catlin because he does not simply fail to assert the precise role that Defendants played in the alleged conspiracy. Instead, he fails to allege the agreements amongst Defendants required to prove conspiracy to violate RICO. The First Amended Complaint does not present facts from which a reasonable inference can be made that there was any agreement between Defendants to maintain an interest in, participate in the affairs of, or control an enterprise through a pattern of racketeering activity. "It is well established that a complaint may be dismissed if it contains only conclusory, vague and general allegations of conspiracy." *Goren*, 156 F.3d at 733. Accordingly, Count II of Catlin's First Amended Complaint is **DISMISSED**.

## C. STATE LAW CLAIMS

Catlin also claims damages under thirty-five different state consumer protection statutes, including the Indiana consumer protection statute, Ind. Code § 24-5-0.5-1. LaMarca joins Grimm's argument that Catlin does not have standing to bring the majority of these claims because he has only suffered a violation of one of them. Article III of the

Constitution requires that Catlin must have standing to assert his claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("In its constitutional dimension, standing imports justiciablity . . . . This is the threshold question in every federal case, determining the power of the court to entertain the suit."). "That jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 920 (N.D. Ill. 2009) (internal quotations and emphasis omitted). "As a jurisdictional requirement, the plaintiff bears the burden of establishing standing." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). Standing is "not [a] mere pleading requirement[] but rather an indispensable part of the plaintiff's case." *Lujan*, 504 U.S. at 561. Accordingly, Catlin's assertion that he has standing to bring his claims "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of litigation." *Id.* Facial challenges to jurisdiction, such as the one before the Court, require only that the Court look to the Complaint and determine whether Catlin has sufficiently alleged a basis of subject matter jurisdiction. *Apex Digital, Inc.*, 527 F.3d at 443.

Catlin argues that this Court should delay its determination of the standing issue until it has dealt with the issue of class certification. Defendants, not surprisingly, argue that the Court should determine the standing issue prior to considering whether it should certify a class. The parties' divergent arguments stem from a split in authority on the appropriate interpretation of *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999). In *Amchem*, the Supreme Court considered

a challenge to the certification a settlement-only class involving people exposed to asbestos. 521 U.S. at 591-92. Although the Court focused on the role settlement may play in determining class certification under Rule 23, its analysis considered objections to the Article III standing of certain members of the settlement class. *Id.* at 612. The Court declined to reach the standing arguments because the Rule 23 issues were dispositive, stating that the resolution of the class certification issues was "logically antecedent to the existence of any Article III issues." *Id.; see also Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed . . . ."). *Ortiz* concerned the certification of a mandatory class for the purposes of global settlement of an asbestos class action on a limited fund theory. 527 U.S. at 825-27. The Court again considered arguments regarding the Article III standing of certain members of the settlement class who petitioners argued had not suffered any injury in fact. *Id.* at 831. The Court declined to address the Article III issues determining that the Rule 23 issues were "logically antecedent" to the standing inquiry following the same logic that it expressed in *Amchem*. *Id.*

Lower courts largely have interpreted the Court's "logically antecedent" language in two ways. *See* Linda S. Mullenix, *Multi-Jurisdictional and Cross-Border Class Actions: Standing and Other Dispositive Motions After* Amchem *and* Ortiz*: The Problem of "Logically Antecedent" Inquiries*, 2004 Mich. St. L. Rev. 703, 726-31 (2004) (discussing the split in authority and concluding that "courts should continue to review standing challenges, and other traditional pre-certification dispositive motions, at the same time and in the same fashion as those courts did prior to *Amchem* and *Ortiz*"). Some courts interpret the Court's

decision to prevent review of standing challenges prior to the class certification decision. *See, e.g.*, *Vernon v. Qwest Communs. Int'l, Inc.*, 643 F. Supp. 2d 1256, 1264 (W.D. Wash. 2009); *In re Pharm. Inds. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 194 (D. Mass. 2003); *In re Busipirone Litig.*, 185 F. Supp. 2d 363, 377 (S.D.N.Y. 2002). Other courts interpret the *Ortiz* decision to create only a limited exception to treating standing as a threshold issue. These courts distinguish between standing issues relating to the class representative and standing issues related to the class itself. *See, e.g., Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004); *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 n.6 (5th Cir. 2002); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d at 923-24; *Carfagno ex rel. Centerline Holding Co. v. Schnitzer*, 591 F. Supp. 2d 630, 633 (S.D.N.Y. 2008).

The Seventh Circuit has not explicitly settled the question of whether a district court should always delay Article III standing questions until determining whether to certify a class. Catlin cites *Payton v. County of Kane* in which the Seventh Circuit held that a district court erred by not addressing class issues before issues related to standing when a motion to certify the class was pending before the court in support of his argument that this Court must defer its consideration of Catlin's Article III standing until after class certification. *Payton v. Cnty. of Kane*, 308 F.3d 673, 677-82 (7th Cir. 2002). As Grimm points out, the case at bar is distinguishable from *Payton* in that there is no pending Rule 23 motion before the Court. Indeed, the Seventh Circuit cites *Payton* in a subsequent case in which it determines that individual standing may be addressed prior to class certification where there is no motion for certification pending. *See Arreola v. Godinez*, 546 F.3d 788, 794-95 (7th Cir. 2008). Recently, a sister court concluded that the procedural distinction is vital in determining whether the court may address the standing issue prior to addressing the

16

certification issue. *In re Potash Antitrust Litig.*, 667 F. Supp. 2d at 920-23. This Court agrees with the conclusion contained within *In re Potash* that at the heart of the "logically antecedent" language is the requirement that a court facing simultaneous class certification and Article III standing issues should consider the Rule 23 issues prior to the constitutional issues when the Rule 23 issues are dispositive. *Id.* at 923. Accordingly, because no class certification motion is pending, the Court will not defer its consideration of Catlin's Article III standing to bring claims under the state consumer fraud statutes.

The Defendants do not contest that Catlin has standing to bring his claim under the Indiana consumer protection statute. Indeed, he alleges both that he is a resident of Indiana and that the sale of the BioPro product took place in Indiana. Further, Defendants do not contest that Catlin's Complaint contains sufficient allegations to confer standing on him to bring his personal claim in under California's consumer protection statute as well. *See* Cal. Bus. & Prof. Code § 17200; *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1119 (C.D. Cal. 2008) (finding that non-California plaintiffs had standing to assert claims under the California consumer protection statute where they adequately alleged that defendant's harmful conduct occurred in or had strong connections to California). In the instant case, Catlin has alleged sufficient facts for the Court to infer that the decisions surrounding the alleged fraudulent marketing took place in California where the corporate defendants are headquartered and where the individual defendants reside.

As to the other thirty-three state law claims, Catlin does not argue that he personally has standing to bring them. "The irreducible constitutional minimum of standing contains three elements." *Lac du Flambeau Band of Lake Sup. Chippewa Indians v. Norton*, 422 F.3d 490, 495 (7th Cir. 2005) (quoting *Lujan*, 504 U.S. at 560). Those elements are: (1)

17

an actual or imminent invasion of a legally protected interest which is concrete and particularized; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood of redressability by a favorable decision. *Lujan*, 504 U.S. at 560-61.

  Catlin does not allege a personal injury in any of the remaining thirty-three states under which he claims damages. Accordingly, he does not have standing to bring those claims. *See, e.g.*, *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th Cir. 2009) (non-resident plaintiffs may only sue under the Illinois consumer fraud statute if the circumstances relating to the alleged fraudulent transaction occurred mostly in Illinois). Therefore, the Court **DISMISSES** any statutory state consumer fraud claims other than those brought under the Indiana and California statutes.

Finally, Catlin brings an unjust enrichment claim against all of the defendants. Grimm argues that because the sale of goods implies a contract and unjust enrichment sounds in equity, Catlin's unjust enrichment claim should be dismissed. Although it is not clear that LaMarca joins in Grimm's argument, the Court will address it. Catlin may plead his claims in the alternative, Fed. R. Civ. P. 8(d)(2), and his claims may be inconsistent, Fed. R. Civ. P. 8(d)(3). Accordingly, the Court **DENIES** Defendants' motion with respect to Catlin's unjust enrichment claim.

The Court has an "independent obligation" to ensure that it retains subject matter jurisdiction over the matters before it. *Smith v. Am Gen. Life & Accident Ins. Co.*, 337 F.3d 888, 892 (7th Cir. 2003). Accordingly, the Court *sua sponte* raises the question of its subject matter jurisdiction in light of its dismissal of the two federal counts in the Complaint. The claims that remain before the Court are two state consumer fraud claims brought under

18

the Indiana and California consumer fraud statutes as against Actis and LaMarca and Catlin's unjust enrichment claims against Actis and LaMarca. The only possible jurisdictional hook in this matter is diversity. The action was removed to this Court pursuant to 28 U.S.C. § 1332(d), which requires the matter in controversy to exceed the sum of $5,000,000.00, exclusive of costs and interest. As the Court has dismissed the majority of the consumer fraud claims, it is unclear from the pleadings that the action continues to meet the amount in controversy requirement. Accordingly, the Court **ORDERS** the parties to **SHOW CAUSE** within twenty-one days why the action should not be remanded to Hamilton County Superior Court.

## CONCLUSION

For the foregoing reasons the Court **GRANTS** Grimm's Motion to Dismiss [dkt. no. 37] and **GRANTS in Part and DENIES in Part** the California Defendants' Motion to Dismiss [dkt. no. 42]. Specifically, the Court concludes that it lacks personal jurisdiction over Grimm, Hanser, Cormier, Merritt, QuanTech, and Smirnov. It **DISMISSES** Counts I and II of the First Amended Complaint for failure to state a claim. The Court further **DISMISSES** any statutory state consumer fraud claims Catlin brings pursuant the law of any state other than Indiana and California for lack of standing. Finally, the Court **ORDERS** the parties to **SHOW CAUSE** within twenty-one days why the remaining claims should not be remanded to state court because the action no longer meets the amount in controversy requirement, stripping this Court of subject matter jurisdiction.

IT IS SO ORDERED this 17th day of March, 2011.


LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana


Distribution to:

John Michael Antrim
CHURCH CHURCH HITTLE & ANTRIM
antrim@cchalaw.com

Brad A. Catlin
PRICE WAICUKAUSKI & RILEY
bcatlin@price-law.com

Eric Michael Douthit
CHURCH CHURCH HITTLE & ANTRIM
edouthit@cchalaw.com

James Patrick Hanlon
BAKER & DANIELS - Indianapolis
jphanlon@bakerd.com

Kevin M. Kimmerling
BAKER & DANIELS - Indianapolis
kevin.kimmerling@bakerd.com

Steven Michael Lutz
CHURCH CHURCH HITTLE & ANTRIM
lutz@cchalaw.com

Alexander Phillip Pinegar
CHURCH CHURCH HITTLE & ANTRIM
apinegar@cchalaw.com

William N. Riley
PRICE WAICUKAUSKI & RILEY
wriley@price-law.com

Martin E. Risacher
CHURCH CHURCH HITTLE & ANTRIM
risacher@cchalaw.com

Paul A. Wolfla
BAKER & DANIELS - Indianapolis
paul.wolfla@bakerd.com